# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**TERRI DAVIS,**
**Claimant Below, Petitioner**

**FILED**

June 26, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0382** (BOR Appeal No. 2053671)
              (Claim No. 2018004279)

**ROADSAFE HOLDINGS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Terri Davis, by Counsel Patrick K. Maroney, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Roadsafe Holdings, Inc., by Counsel Maureen Kowalski, filed a timely response.

The issues on appeal are temporary total disability and medical benefits. The claims administrator closed the claim for temporary total disability benefits on February 7, 2018. On February 16, 2018, the claims administrator denied referrals to neurology and ophthalmology. The claims administrator denied authorization of an EEG on March 23, 2018. The Office of Judges affirmed the decisions in its November 20, 2018, Order. The Order was affirmed by the Board of Review on March 25, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Davis was injured in the course of her employment on August 16, 2017, when she was struck on the back of the head by a concrete truck chute. She was treated at Thomas Memorial Hospital for a head injury that day and reported vision changes and blurry vision. The diagnoses were listed as head injury and hydrocephalus. A CT scan of Ms. Davis's brain was performed on August 17, 2017, and showed gross hydrocephalus, absent septum pellucidum, likely heterotopic gray matter , large right posterior fossa fluid collection with mass effect upon the cerebellum, right

1

cerebellar tonsillar herniation, thickening of the quadrigeminal plate, and partial calcification and possible septo-optic dysplasia.

Ms. Davis sought treatment on August 20, 2017, at Montgomery General Hospital for head pain, nausea, vertigo, difficulty thinking, neck pain, light and sound sensitivity, and difficulty sleeping. A cervical CT scan showed advanced multilevel degenerative arthritis and disc disease. A CT scan of the head showed severe dilation of the lateral ventricles, possible aqueductal stenosis, bilateral periventricular hypodensity, a large right cerebellar hypodensity, and right cerebella hypoplasia. Ms. Davis was diagnosed with right cerebellar post-traumatic hematoma, severe diffuse ventriculomegaly, and C6-C7 disc bulge. She was transferred to Charleston Area Medical Center (CAMC) for neurological services. The treatment note from CAMC General Hospital indicates Ms. Davis reported headache, nausea, and vision changes with blurring. Her family told physicians that she had experienced slow thought processes for a few months. Ms. Davis was admitted to neurosurgery. An MRI of the cervical spine showed degenerative joint disease and degenerative disc disease. A CT scan of the head showed marked ventriculomegaly, likely chronic central volume loss, and chronic appearing arachnoid cyst.

The claim was held compensable for contusion, laceration, and hemorrhage of the cerebellum, without loss of consciousness and cervical disc displacement at C6-7 on August 28, 2017. On September 14, 2017, Ms. Davis was treated at Brain & Spine Specialists for pain in her head that radiated into her neck, fatigue, imbalance, persistent nasal drainage, mood swings, depression, weakness, and confusion. Ms. Davis also saw John Orphanos, M.D., that day. Dr. Orphanos diagnosed arachnoid cyst with ventriculomegaly and post-concussion syndrome. He recommended a referral to neurology and ophthalmology to evaluated for papilledema. He opined that any symptoms from the large ventriculomegaly were chronic and not related to the work injury.

A September 25, 2017, treatment note by Mary Jenkins, M.D., Ms. Davis's treating physician, indicates diagnoses of post-concussion syndrome, cerebro ventriculomegaly, and headaches. Ms. Davis was to remain off of work until evaluation by a neurologist and orthopedist.

Syam Stoll, M.D., performed an independent medical evaluation on December 4, 2017, in which he assessed cervical sprain/strain and post-concussion syndrome. Dr. Stoll opined that the diagnosis of normal pressure hydrocephalus preexisted the compensable injury and was therefore not work-related. Dr. Stoll further determined that Ms. Davis's current symptoms were not related to the compensable injury. A CT scan showed extensive preexisting normal pressure hydrocephalus, an arachnoid cyst, and cerebella hyperplasia. Dr. Stoll stated that these findings would not be present due to trauma without also seeing evidence of intracranial bleeding or hemorrhage. Dr. Stoll opined that Ms. Davis had reached maximum medical improvement for her compensable injuries.

Ms. Davis was treated by Huselyn Kadikoy, M.D., at Ophthalmology Eye Institute, on December 7, 2017. She reported double vision, blurriness, unfocused vision, and constant head pain. Dr. Kadikoy diagnosed convergence insufficiency and probable decompensation of exophoria. Dr. Kadikoy gave Ms. Davis optical exercises to perform at home and opined that she

may need glasses if her vision did not improve. He stated that there were visual field defects of unclear etiology suggestive of possible mild traumatic optic neuropathy. On December 11, 2017, Ms. Davis was treated at AMG Ophthalmology at CAMC. She was diagnosed with double vision and visual disturbance. Ms. Davis was advised to go to the emergency room to be evaluated by a neurosurgeon.

On January 3, 2018, Ms. Davis treated with David Gloss, M.D., at CAMC Neurology. She reported dizziness, headaches, and confusion. Dr. Gloss diagnosed ventriculomegaly, medication overuse, headaches, post-concussion syndrome, and staring spells. He opined that the ventriculomegaly was found to be chronic in nature. Ms. Davis was referred for an EEG.

Dr. Stoll performed an independent medical evaluation on January 30, 2018, in which he found that Ms. Davis had reached maximum medical improvement for her compensable injuries and assessed 8% cervical spine impairment. He opined that he could not identify any neurological changes. Based on Dr. Stoll's report, the claims administrator closed the claim for temporary total disability benefits on February 7, 2018.

Ms. Davis returned to Dr. Gloss on February 15, 2018, for headaches, which Dr. Glass opined were due in part to medication overuse. Ms. Davis was asked to stop all treatment for headaches for two to three weeks. The diagnoses were headaches and staring spells.

A record review was performed on February 16, 2018, by Ronald Fadel, M.D., who opined that the compensable conditions are symptoms rather than diagnoses. He stated that the symptoms indicate concussion as well as a central nervous system pathology. He stated that it was not unreasonable to conclude that Ms. Davis sustained a concussion as a result of the compensable injury. However, he also found that in the course of treatment for the compensable injury, it was discovered that she has a preexisting condition which required neurological evaluation and a possible shunt to spinal fluid from the brain. Dr. Fadel opined that any further treatment should be handled under Ms. Davis's private health care. The claims administrator denied a referral to neurology and ophthalmology on February 16, 2018.

Dr. Jenkins completed a form on February 22, 2018, indicating that Ms. Davis was unable to return to work due to her compensable injury. The claims administrator denied an EEG on March 23, 2018. On April 11, 2018, Dr. Orphanos opined in a treatment note that it was unclear why Ms. Davis continued to experience headaches, dizziness, and gait instability. Dr. Orphanos diagnosed ventriculomegaly and arachnoid cyst with possible post-concussion syndrome. He recommended another MRI to check for possible changes.

Dr. Jenkins completed an attending physician's report on May 1, 2018, in which she stated that Ms. Davis was still seeing a neurologist and neurosurgeon. Dr. Jenkins opined that she was unable to work due to mental and physical disability. She stated that Ms. Davis was temporarily and totally disabled from August 16, 2017, to December 17, 2017. On May 18, 2018, a brain MRI was performed for congenital malformations of Ms. Davis's brain. The MRI showed fairly severe ventriculomegaly of the lateral and third ventricle. There were no acute findings.

In its November 20, 2018, Order, the Office of Judges affirmed claims administrator's decisions closing the claim for temporary total disability benefits, denying referral to neurology and ophthalmology, and denying an EEG. The Office of Judges found that Dr. Stoll determined Ms. Davis reached maximum medical improvement in his January 30, 2018, evaluation. Dr. Jenkins was the only physician of record to state that Ms. Davis could not return to work due her compensable injury. However, she also completed an attending physician's report which indicated Ms. Davis was temporarily and totally disabled from August 16, 2017, through December 7, 2017. The Office of Judges questioned whether Dr. Jenkins believed Ms. Davis was temporarily and totally disabled past December 7, 2017. Further, the Office of Judges found evidence that Ms. Davis had preexisting conditions, which may be preventing her from returning to work. In an August 21, 2017, CAMC treatment note, it was noted that Ms. Davis's family reported that she had experienced slow thought processes for a couple of months. Ms. Davis was diagnosed with cerebro ventriculomegaly, normal pressure hydrocephalus, arachnoid cyst, and cerebella hyperplasia. The Office of Judges also found that though Ms. Davis's vision and equilibrium problems clearly worsened after the compensable injury, a preponderance of the evidence indicates her inability to return to work was the result of preexisting conditions.

The Office of Judges questioned why Ms. Davis's protest to the February 16, 2018, was still in litigation. Ms. Davis requested referrals to neurology and ophthalmology on September 25, 2017. She was seen by Dr. Kadikoy, an ophthalmologist, on December 7, 2017. On January 3, 2018, Ms. Davis was treated by Dr. Gloss, a neurologist. The Office of Judges therefore determined that the protest to the February 16, 2018, claims administrator's decision was moot since the referrals had already occurred. Finally, the Office of Judges found that the request for an EEG was made by Dr. Gloss to evaluate Ms. Davis's staring spells. There was no evidence that the staring spells are related to the compensable injury. Therefore, the Office of Judges affirmed the denial of an EEG. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 25, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Ms. Davis was found to be at maximum medical improvement on December 4, 2017, by Dr. Stoll. Dr. Fadel also found that she had reached maximum medical improvement and opined that any further medical treatment should be conducted under her private health insurance. The only physician of record to opine that Ms. Davis was temporarily and totally disabled due to the compensable injury was Dr. Jenkins. The weight of the medical evidence supports the reports of Drs. Stoll and Fadel. The Board was also correct in finding that the requested referrals had already occurred and therefore, Ms. Davis's protest to the February 16, 2018, claims administrator's decision was moot. Finally, the request for an EEG failed to indicate that it was necessary medical treatment for a compensable injury. It was therefore properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 26, 2020**


**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING**:

Justice Margaret L. Workman